UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 14-13767-GAO

JONATHAN ASHLEY,
Petitioner,

v.

KELLY RYAN and MARTHA COAKLEY,
Respondents.

OPINION AND ORDER
November 16, 2015

O'TOOLE, D.J.

Following a jury trial, the petitioner, Jonathan Ashley, was convicted of second degree murder. His conviction was affirmed by the Massachusetts Appeals Court on November 15, 2012. Commonwealth v. Ashley, 978 N.E.2d 576 (Mass. App. Ct. 2012). The Massachusetts Supreme Judicial Court denied further review, and the petitioner's petition for a writ of certiorari was likewise denied by the Supreme Court on October 7, 2013. The petitioner timely filed this motion for habeas relief pursuant to 28 U.S.C. § 2254 on October 2, 2014. He has moved to vacate his conviction, claiming that the trial court improperly allowed part of a police interrogation into evidence in violation of his Fifth and Fourteenth Amendment rights against self-incrimination under Miranda v. Arizona, 384 U.S. 436 (1966). Because the petitioner has not shown that the Appeals Court decision affirming his conviction was "contrary to, or involved an unreasonable application of, clearly established Federal law," his claim for habeas relief fails. See 28 U.S.C. § 2254(d)(1).

**I.**     **Background**

The relevant facts are not in dispute. On September 14, 2006, the petitioner was involved in an altercation with three other men. Witnesses testified that during this altercation, the petitioner drew a knife, slashed one of his opponents, and left the scene. The victim died of the stab wound.

The petitioner was arrested at his girlfriend's house the next day and was brought to the New Bedford police station for questioning. An audio and video recording was made of the interview. The petitioner's claim for habeas relief pertains to the state court's decision to suppress only a portion and not all of the interview.

Initially, two officers interrogated the petitioner. Prior to questioning the petitioner, one of the officers orally gave the defendant these Miranda warnings:

> You have the right to remain silent. Anything you say can be used against you in a court of law. You have the right to consult with an attorney before making any statement or answering any questions. You may have him present with you while you're being questioned if you wish. If you cannot afford to hire an attorney, one will be provided [inaudible] will be appointed to represent you before any questioning if you wish [inaudible]. If you decide to answer any questions now with or without an attorney, you still have the right to stop the questioning at any time for the purposes of consulting an attorney. However, you may waive the right to advice of counsel and right to remain silent. You may answer questions or make a statement without consulting an attorney if you so desire. Do you understand each of these rights that have been explained to you?

(Suppl. Answer 12–13 (dkt. no. 13).) The petitioner responded affirmatively.

The officers also handed the petitioner the written New Bedford Miranda form, which read, in pertinent part:

WARNING OF RIGHTS AND WAIVER OF RIGHTS

You must understand your rights before we ask you any questions.

1. You have the right to remain silent.
2. Anything you say can be used against you in a court of law.

3. You have the right to consult with any attorney before making any statement or answering any questions and you may have him present with you while you are being questioned, if you wish.
4. If you can not afford to hire an attorney, one will be provided and will be appointed to represent you before any questioning, if you wish one.
5. If you decide to answer any questions now with or without an attorney you still have the right to stop the questioning at any time for the purpose of consulting an attorney.
6. However, you may waive the right to advice of counsel and the right to remain silent, and you may answer questions or make a statement without consulting an attorney, if you so desire.
7. Do you understand each of these rights that have been explained to you?
8. Having these rights in mind, do you wish to talk to us now?

## WAIVER OF RIGHTS

I hereby voluntarily and intentionally waive my rights and I am willing to make a statement and answer questions. I do not want a lawyer. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

(Suppl. Answer 718.) Below that text is a signature block. The petitioner signed this form. The petitioner did not request an attorney. He responded to the officers' questions concerning what happened the night before. Much of the petitioner's argument concerns whether the "rights" numbered 5 and 6 should have been included on this form and in the oral warnings.

The two officers questioned the petitioner for approximately sixty-eight minutes. The officers repeatedly asked to hear the petitioner's "side of the story." Ashley, 978 N.E.2d at 580. The motion judge found the questioners' style to be "persistent but not coercive." Id. at 584. They only "on one occasion presented a two-choice question whether the killing was intentional or in self-defense." Id. The motion judge ruled that the officers' tactic was one of "using leading questions rather than a forced choice." Id. In this portion of the interrogation, the petitioner gave inconsistent answers. In particular, at various times he denied possessing a knife, implied that he had a knife, and stated that he got rid of the knife.

After this sixty-eight-minute interview, a third officer took over a second phase of the interrogation. The motion judge found that the tenor of the questioning changed significantly, with this new officer repeatedly telling the petitioner that he had to choose between a story of self-defense or intent to kill. Under this more aggressive presentation of a forced choice, the petitioner confessed to killing the victim with a knife.

Before trial, the petitioner moved to suppress the entirety of the recording of this interrogation. The motion judge, after viewing the entire interrogation, partially granted the motion to suppress, suppressing everything after the third officer took over the interrogation. The judge found that the third officer's conduct was coercive and rendered the petitioner's statements involuntary. The motion judge did not suppress the first sixty-eight minutes of the interrogation—before the third officer began questioning—and found that the petitioner knowingly and voluntarily waived his Miranda rights after being given the oral and written warnings and voluntarily gave a statement to the officers.[1] The petitioner was convicted of second degree murder at a trial in which much of the sixty-eight minute recorded interview was introduced into evidence.

On direct review, the Appeals Court affirmed the motion judge's decision, calling the opinion "comprehensive and thoughtful." Ashley, 978 N.E.2d at 579 n.2. The court agreed that while the New Bedford Miranda form included two statements (those numbered 5 and 6) which were not "rights," their inclusion and description as such did not make the petitioner's waiver unknowing or involuntary. See id. at 581–83. The Appeals Court also agreed that the petitioner's statements during the first phase of the interview had been given voluntarily. See id. at 583–85.

---

[1] Consistent with Massachusetts law, the court required proof beyond a reasonable doubt that the petitioner both voluntarily waived his Miranda rights and voluntarily made a statement, a higher standard of evidence than the preponderance of the evidence standard required by the Constitution. See Cooper v. Bergeron, 778 F.3d 294, 298 n.2 (1st Cir. 2015).

## II. Standard of Review

Post-conviction relief pursuant to § 2254 is an extraordinary remedy. Under the standard of review established by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a habeas petition will not be granted "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the state court decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Habeas relief is not warranted if the state court's decision was merely erroneous or incorrect; it must be "objectively unreasonable." Woodford v. Visciotti, 537 U.S. 19, 27 (2002).

"[C]learly established law as determined by [the Supreme] Court 'refers to the holdings, as opposed to the dicta, of [that] Court's decisions as of the time of the relevant state-court decision.'" Yarborough v. Alvarado, 541 U.S. 652, 660–61 (2004) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)). Reviewing federal courts look to "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72 (2003). "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Yarborough, 541 U.S. at 664–66 (applying that "principle" to custody determination for Miranda warnings and reversing grant of writ of habeas corpus).

## III. Discussion

### A. Waiver of Rights

The petitioner first contends that his Miranda warnings were improperly given and that as a consequence, his waiver of those rights was not voluntary and intelligent. Specifically, he argues

that the fifth and sixth "rights" on the written Miranda form were inaccurate statements of the law and not rights at all, and including them undercut the impact of the four actual Miranda warnings.

The Miranda warnings of course derive their name from the landmark Supreme Court case Miranda v. Arizona, 384 U.S. 436 (1966). There, the Supreme Court held that prior to a custodial interrogation four now well-known rights must be described to the interviewee:

> He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

Miranda, 384 U.S. at 479. The first four rights on the New Bedford Miranda form are nearly identical in language to the formulation given by the Supreme Court, and the petitioner does not claim any error in these four elements.

The petitioner instead presses that the issues with the other "rights" listed on the New Bedford form undermine the entire set of Miranda warnings. The fifth so-called "right" is inaccurate in the sense that it implies that a defendant may stop responding to questions *only* for the purpose of consulting with an attorney, as opposed to stopping for any other purpose. The motion judge found and the Appeals Court affirmed that to the extent the fifth right misstated the law, that misstatement was harmless. Ashley, 978 N.E.2d at 582. The sixth "right" is more accurately described as a summary of the form's waiver section, and by its own terms—and contrary to the repeated assertions of the petitioner—is not phrased as a right at all. The Appeals Court agreed with the motion judge that these fifth and sixth "rights" did not "dilute the impact and effectiveness of the core Miranda rights." Id.

Here, because the petitioner can point to no "clearly established Federal law, as determined by the Supreme Court of the United States" prohibiting the use of a Miranda warning with extra statements, the Appeals Court's holding cannot be overturned on that ground. See 28 U.S.C. §

2254(d)(1); see also Brown v. Ruane, 630 F.3d 62, 68 (1st Cir. 2011) ("A threshold determination that no holding of the Supreme Court required application to the factual context presented by the petitioner's claim is dispositive in the habeas analysis."). What cases the petitioner does cite to support his argument bear little, if any, relevance to the reading of extra statements after the four Miranda warnings. See (Mem. in Supp. of Pet. for Writ of Habeas Corpus 23–28 (dkt. no. 14)); cf. Missouri v. Seibert, 542 U.S. 600, 616–17 (2004) (holding that eliciting confession without Miranda warnings, then giving warning twenty minutes later, then requestioning defendant, rendered warnings inadequate); Dickerson v. United States, 530 U.S. 428, 444 (2000) (finding that Congress cannot abrogate the constitutional necessity of Miranda warnings).

In marked contrast to the petitioner's claims, Supreme Court precedent provides few specific requirements for the wording of the Miranda warnings. See Duckworth v. Eagan, 492 U.S. 195, 200–03 (1989) (finding that language in Miranda warning that attorney would be appointed "if and when you go to court" does not render the warning inadequate). "Miranda [does not] exten[d] to the precise formulation of the warnings given a criminal defendant," and "no talismanic incantation [is] required to satisfy its strictures." Duckworth, 492 U.S. at 202–03 (quoting California v. Prysock, 453 U.S. 355, 359 (1981) (per curiam)) (alteration in original).

The petitioner makes note that the Supreme Court in Dickerson described the Miranda warnings as "*four* warnings," apparently to argue that anything said in addition to those four warnings is inappropriate. See Dickerson, 530 U.S. at 435 (emphasis added). In that passage, the Supreme Court merely summarized the history of Miranda and did not in any way engage analytically with the number of warnings. See id. at 434–35. In any event, the remark was merely dictum and does not create a ground for relief under § 2254. See Yarborough, 541 at 660–61. The Supreme Court has never required one particular formulation of the Miranda warnings, holding

only that the four rights as expressed in Miranda must be explained in some way. See Duckworth, 492 U.S. at 201–03.Without "clearly established Federal law" requiring any specific formulation of the Miranda warnings, habeas relief cannot be granted as the petitioner requests. See 28 U.S.C. § 2254(d)(1).

### B. Voluntariness of Statement

The petitioner next argues that even if his Miranda waiver was voluntary, due to the coercive tactics used by the police officers, his subsequent statements were not. Statements to interrogating officers are involuntary if "the will of the defendant ha[s] been overborne." United States v. Jacques, 744 F.3d 804, 809 (1st Cir. 2014) (quoting Bryant v. Vose, 785 F.2d 364, 367 (1st Cir. 1986)).[2] In addressing a similar claim of involuntary post-Miranda statements in the context of a § 2254 petition, the First Circuit has said:

> Ultimately, the voluntariness inquiry is a mixed question of law and fact, and it is one that is understood as allowing sound jurisprudential judgment within fairly wide margins. In light of the deference due state courts under AEDPA, we are thus, again, required to give considerable leeway to the state court's resolution of the federal constitutional question.

Cooper v. Bergeron, 778 F.3d 294, 306 (1st Cir. 2015) (citations omitted). In that case, the police officers who questioned the petitioner threatened to have a state agency remove his child from his ex-wife's custody. Id. at 297. However, the court upheld the Massachusetts Appeals Court decision that the petitioner's statements were voluntary, taking into account all the attendant circumstances, including the petitioner's demeanor, his prior experience with law enforcement, and the petitioner's statements themselves. See id. at 306–08.

---

[2] As the Supreme Court has noted: "[c]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of Miranda are rare." Dickerson, 530 U.S. at 444 (quoting Berkemer v. McCarty, 468 U.S. 420, 433 n.20 (1984)) (alteration in original).

When compared with Cooper, the petitioner here cannot show that his interrogation fell so far below the constitutional standard that it was an "extreme malfunctio[n]" of the criminal justice system. See Burt v. Titlow, 134 S. Ct. 10, 16 (2013) (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011)) (alteration in original); see also Jacques, 744 F.3d at 809–12 (finding that threats of retaliation for not cooperating, a single mention of petitioner's father's health, and officer misrepresentations about the quality of the evidence against petitioner, the seriousness of the charges, and the potential negative media attention were all allowable "chicanery" as part of the interrogation process).

The petitioner here experienced less coercive tactics than those employed in Cooper and Jacques, he had experience with the criminal justice system, and he was fully in possession of his faculties at the time of the interview. The motion judge carefully reviewed the officers' interrogation techniques and suppressed the video recording of the interview after those tactics changed substantially in the second phase. She reasonably found that the petitioner's statements during the first portion of the interrogation were voluntary. Her careful and reasoned analysis does not begin to approach the level of objectively unreasonable constitutional error required by AEDPA.

## IV.   Conclusion

For the reasons stated above, the petitioner fails to show how the Appeals Court's affirmance of his conviction was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), and thus his Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus (dkt. no. 1) is DENIED.

Finally, because the defendant has not "made a substantial showing of the denial of a constitutional right," see 28 U.S.C. § 2253(c)(2), no certificate of appealability shall issue.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge